# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

FREDERICK W. ADKINS,

    *Petitioner*,

vs.

DWIGHT NEVEN, *et al.*,

    *Respondents.*

2:13-cv-02170-JCM-PAL

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the court on respondents' motion (ECF No. 55) to dismiss and petitioner's crossing motion (ECF No. 61) in the alternative for a stay and abeyance.  Respondents contend that the petition, as amended, is subject to dismissal because: (a) all of the grounds are unexhausted; (b) ground 4, in the alternative, is procedurally defaulted; (c) ground 4 does not relate back to the original petition and is untimely; and (d) all of the grounds are not cognizable.

## *Background*

Petitioner Frederick Adkins challenges his 2008 Nevada state conviction following an *Alford* plea and his adjudication as a habitual criminal.

The judgment of conviction, as amended, adjudged Adkins guilty of: (a) on count I, stop required on signal of peace officer; (b) on count II, assault; (c) on count III, battery; (d) on count IV, false imprisonment; (e) on count V, unlawful taking of a vehicle; and, (f) on count VI, intimidating a witness.  The judgment further adjudicated petitioner as a habitual criminal.  The judgment sentenced petitioner as a habitual criminal on count I to 120 to 300 months and

as a habitual criminal on count VI to a consecutive term of 120 to 300 months.  The judgment sentenced petitioner on the remaining four counts to lesser sentences that ran concurrently with count I and which all were discharged by credit for pre-sentence time served at the time of the amended judgment.[1]

Petitioner pursued a direct appeal, a state post-conviction petition, a motion to vacate or correct sentence, and a motion to correct illegal sentence through to a denial of relief by the state supreme court.  He also filed an original petition for a writ of mandamus or prohibition in the state supreme court.

### Discussion

#### Exhaustion

##### Governing Law

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts.  To satisfy this requirement, the claim must have been fairly presented to the state courts completely through to the highest level of review available.  *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim.  *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000).  That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based.  *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees.  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

---

[1]ECF No. 21, Ex. 51.  Respondents have filed state court record exhibits at ECF Nos. 19-25, 27, 44 and 56.  The court hereafter cites to these exhibits directly to the exhibit number.  Any page number cites are to the electronic docketing page number in the header at the top of the page rather than to the internal page number of the document, unless otherwise indicated herein.

*Ground 1*

In ground 1 of the amended petition, Adkins alleges that he was denied rights to due process and effective assistance of counsel allegedly in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments when defense counsel failed to object to the entry of his plea while he was under the control of involuntarily administered narcotics and anti-psychotics. Petitioner alleges in particular that: (1) he has bipolar, schizophrenic, manic-depressive, and antisocial disorders; (2) anti-psychotic drugs such as lithium, Ritalin (methylphenidate), Depakote (valproate), Seroquel (quetiapine), Sinequan (doxepin), Prozac (fluoxetine), and Haldol (haloperidol) were administered to him involuntarily, illegally, and medically improperly without a court order; (3) these drugs were injected into him by force several times the day of his plea, including just prior to the hearing; (4) the mixture of the drugs caused confusion, blurred vision, and sleepiness; and (5) he therefore was not able to comprehend the waiver of his constitutional rights and his plea accordingly was not knowing and voluntary.  Petitioner alleges that the foregoing deprived him of his due process right to not be subjected to involuntary administration of narcotic and anti-psychotic drugs.  He further alleges that his counsel's advice that he enter a plea in these circumstances constituted ineffective assistance of counsel.[2]

Respondents contend that ground 1 is unexhausted because petitioner presents new legal and factual allegations that were not fairly presented to the state supreme court. Respondents contend that Adkins did not fairly present allegations: (1) that the circumstances violated the Fifth and Eighth Amendments; (2) that the drugs were involuntarily administered; (3) as to the basis of the involuntary administration; (4) as to petitioner's diagnoses or the drugs he was taking; (5) as to the alleged effects of the drugs; and/or (6) that he had been administered a specific improper combination of the drugs at the time of his plea.[3]

/ / / /

_____

[2]ECF No. 50, at 3-4.

[3]ECF No. 55, at 15.

At the outset, given the state court procedural history canvassed below, it is clear that the state supreme court was fairly presented with the same claims and factual allegations that were fairly presented to the state district court.

On state post-conviction review, the state district court initially denied relief without appointing counsel or holding an evidentiary hearing.  The state supreme reversed on appeal, however.  The court held that petitioner's claims included some claims "which require the development of facts outside the record."  The court remanded for appointment of counsel.[4]

On remand, as discussed further below, the state district court appointed counsel and approved initial expenditures for an investigator and a medical expert.  The court held an evidentiary hearing directed to certain issues, and it held the record potentially open for possible testimony from the medical expert.  The district court ultimately denied relief on the merits without further proceedings, however, holding that expert testimony would not assist the court in its determination given the remaining evidence considered.

Petitioner appealed *pro se*.  The appeal was submitted to the state supreme court on the district court record without briefing pursuant to a discretionary procedure specific to Nevada state post-conviction appeals.[5]

Petitioner sought to present briefing in proper person to the state supreme court during the appeal, but these submissions were only stamped received without also being accepted for filing.  However, the court stated in its order of affirmance:

> We have reviewed all documents that appellant has submitted in proper person to the clerk of this court in this matter, and we conclude that no relief based upon those submissions is warranted.  To the extent that appellant has attempted to present claims or facts in those submissions which were not previously presented in the proceedings below, we have declined to consider them in the first instance.

Ex.168, at 9 n.3.

_____

[4]Ex. 89.

[5]See Ex. 168, at 2 n.1 (noting submission on the record without briefing); Ex. 143 (directing that the full record be transmitted).  See Nevada Rule of Appellate Procedure 34(g).

-4-

1       Accordingly, given that the second state post-conviction appeal was submitted to the

2  state supreme court on the record before the state district court with no appellate briefing that

3  either expanded or limited the claims, the claims and factual allegations that were fairly

4  presented to the state district court also were fairly presented to the state supreme court.[6]

5       As noted, the state district court authorized expenditures for, *inter alia*, a medical

6  expert following the remand.  The evidentiary hearing was continued to allow time for the

7  expert to review materials and render an opinion, and petitioner thereafter sought a second

8  continuance at the reset hearing date.  The expert initially reviewed only records from the

9  state facility that had conducted petitioner's competency evaluation earlier in the case.

10  However, petitioner wanted the expert to also review the records of the medications

11  administered to petitioner instead at the detention facility prior to and at the time of his plea.

12  The state district court ultimately proceeded forward with an evidentiary hearing on other

13  issues while potentially holding the record open for the medical expert testimony following

14  such review.[7]

15       The state district court thereafter determined that further factual development was not

16  necessary prior to entry of a final decision on all claims.  The same state district judge had

17  presided over petitioner's original criminal and post-conviction proceedings.  The court found

18  and concluded, *inter alia*, that: (1) petitioner "testified he was drugged on the date of his

19  arraignment and sentencing to an extent that made him zombie-like or acting as a

20  sleepwalker" but "[t]his claim lack[ed] credibility since he exhibited no such behavior while

21

---

22      [6]Respondents contend that petitioner's proper person appellate briefing did not fairly present any

23  claims to the state supreme court because the papers were not accepted for filing under Nevada practice.
    However, the state supreme court's statement in its order of affirmance that it nonetheless had considered

24  the papers – except as to claims or facts not presented to the state district court – arguably would lead to a
    conclusion that the content of the papers to that extent was considered on the merits by the state supreme

25  court.  *See Chambers v. McDaniel*, 549 F.3d 1191, 1195-99 (9th Cir. 2008)(similar language in an order
    denying an original petition for an extraordinary writ signified a consideration on the merits and exhausted the

26  claims in the original petition).  The point is not a material one, however, given that the state supreme court
    limited its consideration of the proper person appellate briefing to claims and facts presented to the state

27  district court.  The inquiry as to what claims and facts were exhausted thus comes back in the final analysis to
    the question of what claims and facts were fairly presented to the state district court.

28      [7]Ex. 117; Ex. 122, at 3-5, 26-27 & 143.

1   maintaining he was on his prescribed medications;" (2) "Petitioner exhibited the same mental

2   state and capacity during all stages of the post-conviction process, including the evidentiary

3   hearing [where he questioned witnesses and extensively argued specifics of the case to the

4   court side-by-side with appointed counsel], as he exhibited during the arraignment and

5   sentencing stages;" (3) "Defense counsel had several meetings with Petitioner in which any

6   changes in Petitioner's mental state could be evaluated;" (4) at the plea canvass, the court

7   "found the Petitioner to be lucid, in command of his memory and able to appropriately

8   respond to all questions posed;" (5) petitioner stated "his medications knock him out and that

9   his condition would be obvious to everyone" but he "has never appeared in such a mental

10   state during hearings in which he professes to have been medicated;" (6) petitioner

11   "manipulated his medications in an apparent attempt to create appellate issues;" (7) "[t]he

12   testimony of any expert witness to offer an opinion that Petitioner would be incapable of

13   understanding the consequences of his plea or the nature of the proceedings would not assist

14   the court in a determination due to evidence presented by Petitioner concerning the usual

15   impacts of the drugs on his behavior and demeanor, which behavior and demeanor as

16   perceived by the court on multiple occasions was contrary to how Petitioner contends he

17   should have been perceived;" (8) "Petitioner voluntarily entered into the guilty plea agreement,

18   understood the consequences of his plea and waived his constitutional rights as detailed in

19   the written plea agreement;" and (9) "Counsel reasonably concluded that Petitioner

20   comprehended what charges he was facing, the consequences of those charges and, despite

21   his psychological problems, fully comprehended his situation."[8]

22       Clearly, the state district court did not rule that the specific allegations regarding

23   petitioner's mental health condition and medications that he sought to substantiate through

24   a medical expert were not properly before the court procedurally in the post-conviction

25   proceedings.  Rather, the court held that the presentation of such evidence would not lead

26   to a different outcome given the marked divergence between what petitioner was thereby

27

28       [8]Ex. 133, at 5-9.

1   seeking to establish that the medications allegedly obviously did to him and his actual

2   presentation at the time of his plea.[9]

3        This court therefore looks to the *pro se* state petition, the counseled supplemental

4   petition, and petitioner's other filings and representations at hearings before the state district

5   court as to the facts that he would be seeking to show regarding his mental health and

6   medications at the time of the plea to determine what claims and factual allegations were

7   fairly presented to the state district court and, hence, the state supreme court.

8        Looking at those materials, it is clear that Adkins presented factual allegations: (1) that

9   medications had been involuntarily administered as of the time of his plea;[10] (2) as to the

10  basis of the involuntary administration;[11] (3) as to petitioner's diagnoses and the medications

11  he was taking;[12] and (4) as to the alleged effects of the medications.[13]   Petitioner presented

12  no factual allegations to the district court – by any means prior to the court's decision – that

13  the medications were injected into him by force several times the day of his plea, including

14  just prior to the hearing.

15  _____

16      [9]In the state post-conviction proceedings, counsel for the State sought to maintain that petitioner's

17  claims and facts regarding his mental health condition and medications were not properly before the court on
    the pleadings.  Counsel urged that petitioner – rather than being allowed to amend to correct any such

18  alleged pleading issues in the then-pending petition – could only pursue such claims and facts in a later
    petition, where of course petitioner likely would have been procedurally barred from pursuing the claims.  Ex.

19  122, at 11-14, 17-18 & 24-26.  The state district court did not adopt counsel's position and instead decided
    the matter on the basis outlined in the text.  A different issue would have been presented on federal habeas

20  review if the state district court had held that petitioner procedurally could not present the claims and facts in
    the pending proceeding despite petitioner's efforts to do so.  In such a situation, a substantial argument

21  perhaps could have been made given the record in the state post-conviction proceedings that petitioner had
    fairly presented the factual allegations and claims to the state courts but had been denied an adequate

22  opportunity to present the supporting facts.  The state district court made no ruling, however, that the factual
    allegations were not properly before the court.  The court instead held that presentation of medical evidence

23  along the lines sought by petitioner would not lead to a different outcome on the petition.

24      [10]Ex. 122, at 139-41 (closing argument at evidentiary hearing).

25      [11]*Id.*

26      [12]Ex. 76, at 3-4, 6 & 16-30 (response to State's opposition to *pro se* original petition); Ex. 107, at 3

27  (counseled supplemental petition); Ex. 122, at 4-11, 18-19, 21-23, 96-98, 105-09 & 129-32 (argument
    seeking an evidentiary hearing continuance, testimony, and closing argument).

28      [13]Ex. 76, at 4 & 16-30; Ex. 122, at 17-18, 105-09 & 129-32.

Petitioner asserted legal claims that: (1) he was denied due process and should be allowed to withdraw his plea because he was under the influence of powerful psychotropic medications at the time of his plea, and (2) he was denied effective assistance of counsel when counsel allowed him to enter a plea in that condition.[14]   While petitioner did not expressly invoke the Fifth Amendment as opposed to the Sixth Amendment in his *pro se* petition, his due process claim necessarily arose under the Due Process Clause of the Fifth Amendment rather than the Sixth Amendment.  Petitioner did not present, however, any legal claim under the Eighth Amendment.  Nor did he raise a claim in the state district court that he was denied a due process right to not be subjected to involuntary administration of narcotic and anti-psychotic drugs.  The only due process claim that was exhausted instead was the claim that he was denied due process because his plea was not knowing, voluntary and intelligent because of the effect of the medications.[15]

Accordingly, with the exceptions noted, ground 1 is exhausted, given that: (a) the state district court addressed the expanded claims on the merits on the premise that the further factual development sought would not lead to a different outcome; and (b) the state supreme court decided the appeal on the record before the state district court with no appellate briefing that limited the claims that were before the district court.  When a state court decides a claim on the merits, the claim is exhausted regardless of whether the claim otherwise would have been exhausted absent the decision on the merits.  *See, e.g., Comstock v. Humphries*, 786 F.3d 701, 707 (9th Cir. 2015).[16]

---

[14]Ex. 64, at 6; Ex. 76, at 3-5; Ex. 107, at 3 & 10-11; Ex. 122, at 18-19, 22, 27 & 140-42.

[15]Petitioner did not seek to present the unexhausted claims and allegations in ground 1 to the state courts in his two motions to correct or vacate sentence.  See Exhs. 145 & 171.  His original petition for extraordinary relief in the state supreme court sought the removal of state post-conviction counsel and thus did not present any claims for disposition on the merits.  See Ex. 124.  The state supreme court in any event did not consider the merits of any claims in those proceedings.  Any such claims exceeded the scope of claims that could be considered on the motions, and the state high court declined to exercise its discretionary jurisdiction on the original petition expressly without deciding the merits.  See Exhs.125, 172 & 187.

[16]The question on the merits on federal habeas review as to ground 1 therefore will be whether the
(continued...)

-8-

***Ground 2***

In ground 2 of the amended petition, petitioner alleges that he was denied rights to procedural due process and effective assistance of counsel allegedly in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments when defense counsel failed to object to Adkins being evaluated by only one doctor during the competency evaluation after petitioner had attempted suicide a first time and thereafter failed to seek a second competency evaluation after petitioner attempted suicide a second time.  Petitioner includes extensive allegations regarding the alleged requirements for a competency evaluation under Nevada law, the circumstances of the second suicide attempt and defense counsel's knowledge thereof, and counsel's testimony at the state post-conviction evidentiary hearing allegedly that counsel wished that the contentious Adkins instead had succeeded in killing himself.[17]

No such expansive claim was fairly presented to the state courts.  Nor, in contrast to ground 1, was any such expansive claim considered by the state district court or state supreme court on the merits.

In the original *pro se* petition, petitioner alleged only conclusorily that he was denied effective assistance of counsel because counsel "[s]hould have *called [an] expert witness* concerning petitioner's current medications and current mental state."[18]  The conclusory allegation did not clearly distinguish between the issue of capacity at the time of the offense – and petitioner urged in the state courts that counsel should have pursued a challenge to his capacity to commit the offenses – and competence during the criminal proceedings.

*/ / / /*

---

[16](...continued)
state courts' disposition of the claims on the merits, on the rationale relied upon by the state courts without the further record development sought by petitioner, withstands review under the standards in 28 U.S.C. § 2254(d).  If the state court disposition does withstand review under AEDPA, no further factual development may be considered by the federal court.  *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011).  If it does not, then the claims would be subject to *de novo* review with possibly further federal record development.  The claims are exhausted, however, to the extent identified in the text.

[17]ECF No. 50, at 6-7.

[18]Ex. 64, at 6.

1    In the counseled supplemental petition, Adkins alleged also only conclusorily that he

2    was denied effective assistance of counsel because counsel: (1) failed "to properly investigate

3    and prepare for plea entry, *specifically* for failing to *talk to witnesses* about Defendant's

4    mental state and the *psychotropic drugs* which Defendant was taking and their effect on his

5    mental acumen at entry of plea and sentencing;" and (2) "failed to discuss or *obtain expert*

6    *testimony* to opine that Mr. Adkins was mentally unstable and that the *medication* he was on

7    precluded his knowing and voluntary plea."[19]

8    These conclusory allegations did not exhaust claims that petitioner was denied

9    effective assistance of counsel because defense counsel instead failed to object to petitioner

10    being evaluated by only one doctor during the first competency evaluation allegedly in

11    violation of  Nevada state law and failed to request a second court-ordered competency

12    evaluation by the state psychiatric facility after petitioner attempted suicide a second time.

13    These claims and allegations present entirely new and different claims that were not fairly

14    presented in the conclusory claims in the state pleadings directed to other alleged failures by

15    counsel.

16    Ground 2 is unexhausted.[20]

17    ***Ground 3***

18    In ground 3 of the amended petition, petitioner alleges that he was denied a right to

19    effective assistance of counsel allegedly in violation of the Fifth, Sixth, Eighth and Fourteenth

20    Amendments when counsel failed to conduct any investigation prior to his plea and failed to

21    investigate a mental health defense based upon an alleged "bipolar defense."  Petitioner

22    alleges in particular that: (1) counsel failed to conduct any investigation between petitioner's

23    arrest and the preliminary hearing where he opted for a plea deal; (2) counsel knew that

---

25    [19]Ex. 107, at 10 & 11 (emphasis added).

27    [20]Petitioner did not seek to present the unexhausted claims and allegations in ground 2 to the state
courts in either his two motions to correct or vacate sentence or his original petition for extraordinary relief in
the state supreme court.  Moreover, his motions to vacate or correct sentence and his original petition for an
extraordinary writ exhausted no claims.  See note 15, *supra*.

petitioner allegedly had a lifelong history of mental illness and was in and out of mental health institutions and group homes; had been sexually assaulted, molested and beaten; and had been off his medications at the time of the offenses because he had been unable to obtain his medications after being released from prison; (3) counsel further knew that petitioner had been diagnosed as bipolar, schizophrenic, and subject to antisocial personality disorder; was on lithium, Ritalin, Depakote, Seroquel, Sinequan, Prozac, and Haldol during the representation; and had attempted suicide during that time; and (4) counsel nonetheless failed to investigate and present an alleged "bipolar defense" to the charges against petitioner.

The analysis of the exhaustion issue as to ground 3 is similar to that for ground 1. As discussed as to that ground, the state supreme court had before it the same claims and allegations that were before the state district court because it decided the state post-conviction appeal without briefing on the record before the district court.[21]

In the state district court, petitioner presented only minimal supporting factual allegations in both the *pro se* original petition and the counseled supplemental petition. However, he provided further factual specifics in his *pro se* response to the State's opposition to the petition and also in argument and testimony at the evidentiary hearing.[22]

Further to the point, the state district court actually considered a claim that counsel was ineffective for failing to investigate and present an alleged "bipolar defense." Similar to its consideration of the claim in ground 1, the district court did not limit its consideration of the claim to the more bare bones allegations in the pleadings.[23] While there is no indication that

---

[21]See text, *supra*, at 4-5.

[22]See Ex. 64, at 6 (allegations under ground 1 of the *pro se* original state petition); Ex. 76, at 3-4, 6 & 9-10 (*pro se* response to the State's opposition); Ex. 107, at 10 (counseled supplement to petition); Ex. 122, at 38-40, 57-58, 80-81, 83, 87-88, 100-01, 103-04, 108-113, & 135 (evidentiary hearing argument and testimony).

[23]Ex. 133, at 5-17 & 8-9 (findings nos. 17, 20 & 26; conclusions nos. 3, 7, 8 & 10). Respondents concede in the motion to dismiss in this court that if the allegations in petitioner's proper person appellate brief constituted references to the "bipolar defense," then the factual allegations in ground 3 are exhausted. ECF No. 55, at 19. However, as discussed above as to ground 1, the content of petitioner's proper person
(continued...)

1  the claim was fairly presented to or considered by the state district court instead under the

2  Fifth and Eighth Amendments, the district court clearly considered the claim as an ineffective-

3  assistance claim under the Sixth and Fourteenth Amendments.  The consideration of the

4  claim on the merits exhausts the claim.  *Comstock, supra*.  The claim considered by the

5  district court therefore also was before the state supreme court, which took up the matter on

6  the state district court record.

7      Ground 3 therefore is exhausted except to the extent that petitioner relies upon the

8  Fifth and Eighth Amendments.

9      ***Ground 4***

10      In ground 4, Adkins alleges that he was denied a right to due process[24] because he

11  allegedly is "actually innocent" of his habitual criminal adjudication because: (a) the state

12  district court allegedly lacked jurisdiction to sentence him as a habitual criminal because the

13  prosecution, after previously filing notices of intent to seek habitual criminal adjudication, did

14  not charge him as a habitual criminal in a "controlling" amended information filed on the day

15  of the sentencing or file a new notice; and (b) the district court failed to sentence him on the

16  principal offenses.  He requests that this court vacate his habitual criminal sentence and direct

17  that he be sentenced only on the principal offenses in the "controlling" information.[25]

18  ───────────────────

19      [23](...continued)

20  briefing is not material given that the state supreme court limited its consideration of the proper person
   appellate briefing to claims and factual allegations presented to the district court.  That is, exhaustion in this
21  case turns upon what claims and factual allegations were before the state district court, not what petitioner
   attempted to present on an appeal that was decided on the record below without briefing.  Respondents'
22  concession, however, does reinforce the conclusion that the factual allegations of ground 3 are exhausted –
   not because petitioner included the claim in his attempted proper person appellate briefing but instead
23  because the state district court actually considered the claim on the merits.

24      [24]Respondents maintain that petitioner failed to allege a federal basis for ground 4.  However, Adkins
   invoked due process at line 25 on handwritten page 9A of his amended petition.

25      [25]ECF No. 50, at 13-16.  The court has considered the timeliness of ground 4 in advance of taking up
26  the exhaustion issue.  The court is not persuaded that ground 4 in the amended petition fails to relate back to
   a timely claim in the original petition.  In original ground 4, petitioner alleged, *inter alia*, that he had been
27  denied effective assistance of counsel because counsel failed to object to the sentencing court's alleged lack
   of jurisdiction due to untimely notice of the intent to seek habitual criminal adjudication.  ECF No. 3, at 13-14.

28                                                                                     (continued...)

1   Petitioner concedes in his response to the motion to dismiss that he never raised a

2   claim in the state courts that he was actually innocent of the habitual criminal adjudication.

3   He asserts that he "became aware of the 'actual innocent' status after his state court

4   proceedings."[26] Ground 4 – a purported federal constitutional claim that petitioner was denied

5   due process because he is actually innocent of the habitual criminal adjudication – thus is

6   wholly unexhausted, regardless of whether or not petitioner presented particular underlying

7   factual allegations in support of other claims in the state courts.  The legal theory that

8   petitioner was denied due process because he is actually innocent of the habitual criminal

9   adjudication is the sole federal legal theory pursued in ground 4.  Given that the sole federal

10   legal theory in ground 4 is unexhausted, the entire federal claim is unexhausted.

11   The court concludes, however, that further federal and/or state proceedings on the

12   unexhausted ground 4 would be futile because it is perfectly clear that ground 4 fails to

13   present even a colorable federal claim.  The court accordingly will dismiss the wholly

14   unexhausted claim with prejudice on the merits under 28 U.S.C. § 2254(b)(2).  *See Cassett*

15   *v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).

16   The Supreme Court has not as yet recognized a freestanding "actual innocence" claim

17   as a constitutional claim in and of itself without being accompanied by an independent

18   constitutional violation.  *See, e.g., McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013);

19   *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993); *Gimenez v. Ochoa*, 821 F.3d 1136, 1143 (9th

20

21   _____

22   [25](...continued)
    Respondents urge that amended ground 4 does not relate back to original ground 4 because amended
    ground 4 adds allegations that "the court failed to sentence Adkins on his principle [sic] crimes . . . and that he

23   is 'actually innocent' of the crimes and sentences."  ECF No. 55, at 11.  The court is satisfied that the added
    allegation regarding a failure to sentence petitioner on the principal offenses arises from a common core of

24   operative facts with original ground 4 regarding the habitual criminal adjudication and sentencing.  *See Mayle
    v. Felix*, 545 U.S. 644, 657 (2005).  The allegation as to actual innocence presents a new legal theory tied to

25   the same core of operative facts.  A claim that merely adds "a new legal theory tied to the same operative
    facts as those initially alleged" relates back and is timely.  545 U.S. at 659  n.5.  The court thus is not

26   persuaded that amended ground 4 is untimely.  However, it would reach the result reached *infra* regardless.

27   [26]ECF No. 60, at 10.  Petitioner thereafter seeks to establish that a failure to review the claim would
    result in a fundamental miscarriage of justice, based upon his alleged actual innocence of the habitual

28   offender adjudication.  The current issue, however, is exhaustion, not procedural default.

1   Cir. 2016), *cert. denied*, 2016 WL 5346819 (U.S., Nov. 28, 2016).  No such claim has been

2   recognized as yet as to actual innocence of a noncapital offense.  *E.g., Jones v. Taylor*, 763

3   F.3d 1242, 1246-47 (9th Cir. 2014).  Nor has such a claim been recognized as to "actual

4   innocence" of a noncapital sentencing enhancement such as a habitual criminal adjudication.

5          What is clear, however, is that the threshold showing required for any hypothetical

6   freestanding actual innocence claim would be "extraordinarily high" and would require "more

7   convincing proof of innocence" than the actual-innocence standard applied in *Schlup v. Delo*,

8   513 U.S. 298 (1995), for overcoming a procedural bar.  *E.g., House v. Bell*, 547 U.S. 518,

9   554-55 (2006).  At a minimum, the petitioner must go beyond demonstrating merely doubt

10  about his guilt under the *Schlup* standard and instead must affirmatively prove that he is

11  probably innocent.  *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997).  Accordingly, if a

12  petitioner cannot satisfy the lower standard for the *Schlup* actual-innocence gateway, he then

13  clearly cannot satisfy the "extraordinarily high" and "truly persuasive" showing required for

14  habeas relief on a hypothetical freestanding claim of actual innocence.  *See, e.g., Jones*, 763

15  F.3d at 1246-47 & 1251.

16         Under the lower *Schlup* gateway standard, in its traditional formulation, a petitioner

17  must come forward with new reliable evidence that was not presented at the prior state

18  proceeding that, together with the evidence adduced at the proceeding, demonstrates that

19  it is more likely than not that no reasonable trier of fact would have found the petitioner guilty

20  of the offense beyond a reasonable doubt.  *See, e.g., Schlup*, 513 U.S. at 324-27.  The

21  evidence need not be newly discovered, but it must be "newly presented."  *See Griffin v.*

22  *Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003).

23         Most critically for the current context, "'actual innocence' means factual innocence, not

24  mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  A petitioner

25  therefore would need, under the most favorable possible legal standard, to present new

26  reliable evidence tending to demonstrate that he was actually factually innocent of the

27  habitual criminal sentencing enhancement, not merely that there was some alleged legal

28  insufficiency in the proceedings leading to the habitual criminal adjudication.

In the present case, ground 4 does not present any allegations or evidence whatsoever – old or new[27] – tending to establish that petitioner was actually factually innocent of the habitual criminal sentencing enhancement. The state court record clearly reflects that the prosecution presented the prerequisite three prior convictions at the habitual criminal adjudication and sentencing.[28] Adkins personally acknowledged that he had multiple prior convictions on the record at that proceeding.[29] Petitioner further expressly acknowledged prior to the sentencing in the guilty plea agreement that he had the prerequisite number of prior convictions.[30] Copies of the prerequisite convictions also are filed in the federal record.[31]

Petitioner's allegations seeking to establish purported actual innocence in ground 4 instead challenge only the legal sufficiency of the proceedings leading up to the habitual criminal adjudication. In ground 4, petitioner challenges only: (a) the adequacy of the charging instrument and notice at the time of the proceeding of the prosecution's intent to

---

[27]Petitioner presents no new reliable evidence or factual allegations but instead only *post hoc* legal argument based on the same procedural record that was before the state district court at the time of his habitual offender adjudication and sentencing. Petitioner briefed the *Schlup* issue in his opposition.

[28]Ex. 49, at 15-20. See also *id.*, at 25-29.

[29]*Id.*, at 10.

[30]Ex. 37, at 2-3. Petitioner urges that a habitual criminal adjudication could not be based upon the defendant's stipulation under Nevada state law. The federal law issue presented now, however, is whether petitioner can demonstrate actual innocence of the habitual criminal adjudication, and his own prior solemn declaration that he previously had been convicted of at least three felony convictions is directly relevant to that issue. The court would note that the prosecution did not rely solely on the stipulation in the guilty plea agreement at the habitual criminal adjudication but instead came forward with proof of the prior convictions.

The stipulation in the guilty plea agreement also would negate any viable procedural due process claim based upon constitutionally inadequate notice and an opportunity to be heard. Whatever issues may have existed with regard to the adequacy of the formal charge and notice under Nevada state law, Adkins quite clearly had actual notice that the prosecution would be seeking a habitual criminal adjudication at sentencing pursuant to the plea agreement.

[31]Exhs. 46-48. In the context of capital sentencing, the Supreme Court held in *Sawyer v. Whitley*, 505 U.S. 333 (1992), that a petitioner could demonstrate "actual innocence" of the death penalty only by coming forward with evidence raising a reasonable doubt as to the prerequisite facts for eligibility for the death penalty in the first instance, as opposed to presenting mitigating evidence that would bear only on the jury's discretionary decision as to whether to impose the death penalty as to an eligible defendant. 505 U.S. at 339-347. *See also Jones v. Ryan*, 733 F.3d 825, 845-46 (9th Cir. 2013)("actual innocence" of the death penalty for purposes of successive petition review).

1  seek habitual criminal treatment; and (b) the manner in which the judgment of conviction
2  sentenced him vis-à-vis the habitual criminal adjudication and the principal offenses.  Even
3  if the court were to assume that the first alleged error deprived the sentencing court of
4  jurisdiction, any such lack of jurisdiction would go to the legal sufficiency of the proceedings,
5  not to actual factual innocence of the sentence enhancement.

6       Thus, even if a freestanding actual-innocence claim is available in the first instance in
7  noncapital habeas proceedings, and further even if such a claim also extends to claims of
8  actual innocence of noncapital sentence enhancements, petitioner has not presented a
9  colorable claim of actual innocence.  The allegations that he seeks to present to establish
10  actual innocence would not satisfy the *Schlup* actual-innocence threshold because the
11  allegations would tend to establish only legal insufficiency, not actual factual innocence of the
12  habitual criminal enhancement.  Given that petitioner's allegations would not satisfy the lower
13  *Schlup* actual-innocence threshold, the allegations indisputably cannot satisfy the much
14  higher threshold that would be required on a freestanding actual-innocence claim.[32]

15       The court accordingly will dismiss the ground 4 on the merits pursuant to § 2254(b)(2)
16  because it is perfectly clear that ground 4 fails to present even a colorable federal claim.[33]

17       ***Specificity and Cognizability***

18       The court is not persuaded that ground 3 should be dismissed as conclusory.
19  Respondents contend that petitioner failed to allege what investigation counsel failed to
20  conduct and how that alleged failure impacted petitioner's entry of a guilty plea.[34]  Petitioner
21  alleges with sufficient specificity that counsel failed to investigate and present his purported
22  "bipolar defense" to his capacity at the time of the offenses, that counsel otherwise failed to

23  _____

24      [32]*See also Kiesz v. Spearman*, 2014 WL 462864, at *8-*10 (C.D. Cal., Feb. 4, 2014)(petitioner failed
25  to demonstrate actual innocence of the habitual offender enhancement under the *Schlup* standard, with the
    court reviewing related case authority).

26      [33]The court does not reach respondents' alternative argument that ground 4 is procedurally defaulted.
27  The claim in any event is unexhausted rather than procedurally defaulted; and it is dismissed on the merits
    under § 2254(b)(2).

28      [34]ECF No. 55, at 19.

conduct any investigation prior to the preliminary hearing and plea, and that these failures caused petitioner to enter into the plea.  If the state courts rejected corresponding claims on the merits that similarly did not have more factual specificity, then the most pertinent inquiry would appear to be whether the state courts' rejection of the claims as presented withstands review under § 2254(d) on the record presented to the state courts.

The court further is not persuaded that grounds 1 through 3 are not cognizable under *Tollett v. Henderson*, 411 U.S. 258 (1973), as presenting only noncognizable pre-plea claims.

Under *Tollett*, a petitioner convicted pursuant to a plea "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  411 U.S. at 267.  He instead "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within" "the range of competence demanded of attorneys in criminal cases."  *Id.*

The claims in ground 1 that Adkins was denied due process and effective assistance of counsel because counsel failed to object to his entry of a plea while under the control of involuntarily administered drugs go to the voluntary and intelligent character of the guilty plea.

The claims in the unexhausted ground 2[35] that petitioner was denied due process and effective assistance of counsel because counsel failed to object to an allegedly inadequate pre-plea competency evaluation and failed to seek a second competency evaluation after petitioner attempted suicide a second time also clearly go directly to the voluntary and intelligent character of the guilty plea.

The claims in ground 3 that petitioner was denied effective assistance of counsel because counsel failed to conduct any investigation, including of an alleged bipolar defense, prior to the plea also go to the voluntary and intelligent character of the plea.  *See, e.g., Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985)(discussing the required causal relationship between an alleged pre-plea failure to investigate and a decision to enter a plea).

---

[35]Ground 2 has not been dismissed at this juncture.  Petitioner has filed a motion to stay in order to return to state court to exhaust the unexhausted grounds, which is discussed *infra*.

The circuit cases relied upon by respondents do not establish that the specific claims presented in this matter are not cognizable under *Tollett*.  The decisions instead tend to establish that the claims are cognizable.[36]

**Motion to Stay**

Petitioner in the alternative seeks a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), to return to state court exhaust any claims found by the court to be unexhausted.

In order to obtain a stay under *Rhines* stay, a petitioner must demonstrate that there was good cause for the failure to exhaust the claim, that the unexhausted claim is not plainly meritless, and that the petitioner has not engaged in intentionally dilatory litigation tactics. *See* 544 U.S. at 278.

At the outset, a number of the unexhausted claims are plainly meritless and will be dismissed.  When the Supreme Court discussed the requirement for a stay under *Rhines* that the unexhausted claim not be plainly meritless, the court made a comparison cite to 28 U.S.C. § 2254(b)(2) concerning this inquiry.  544 U.S. at 277.  The Ninth Circuit has held that a district court may reject an unexhausted claim on the merits pursuant to § 2254(b)(2) "when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett, supra.*

In ground 1, petitioner alleges that he was denied rights to due process and effective assistance of counsel allegedly in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments when defense counsel failed to object to the entry of his plea while he was under the control of involuntarily administered narcotics and anti-psychotics.  *Inter alia*, the Eighth Amendment claim in ground 1 is unexhausted.  No right to due process or effective assistance of counsel arises under the Eighth Amendment.  The unexhausted Eighth Amendment claim thus is plainly meritless in the context in which it is alleged.

---

[36]*See Lambert v. Blodgett*, 393 F.3d 943, 979-86 (9th Cir. 2004)(considering on the merits, *inter alia*, an IAC claim that counsel failed to investigate a mental illness based defense); *Moran v. Godinez*, 57 F.3d 690, 699-700 (9th Cir. 1994)(considering on the merits, *inter alia*, IAC claims that counsel should have further investigated the petitioner's competence and should have conducted further investigation of mitigating evidence).

1    In ground 3, petitioner alleges similarly in scattershot fashion that he was denied a right

2    to effective assistance of counsel allegedly in violation of the Fifth, Sixth, Eighth and

3    Fourteenth Amendments when counsel failed to conduct any investigation prior to his plea.

4    In a criminal proceeding, the right to effective assistance of counsel arises under the Sixth

5    Amendment rather than the Fifth Amendment.  Further, as discussed above as to ground 1,

6    no right to effective assistance of counsel arises under the Eighth Amendment.   The

7    unexhausted Fifth and Eighth Amendment claims therefore are plainly meritless.

8        Moreover, as discussed previously herein, ground 4 is plainly meritless.[37]

9        These plainly meritless claims will be dismissed pursuant to § 2254(b)(2).

10       Only the following unexhausted claims thus remain before the court: (1) a claim in

11   ground 1 that petitioner was denied a due process right to not be subjected to involuntary

12   administration of narcotic and anti-psychotic medications; (2) claims in ground 1 based upon

13   an allegation that medications were injected into petitioner by force several times the day of

14   his plea, including just prior to the hearing; and (3) the entirety of ground 2, which alleges in

15   the main that petitioner was denied procedural due process and effective assistance of

16   counsel when counsel failed to object to the adequacy of the competency evaluation and

17   thereafter failed to seek another competency evaluation after petitioner again attempted

18   suicide.  These claims are not plainly meritless under the *Cassett* standard.[38]

19       The court turns to the issue of whether petitioner has demonstrated good cause for the

20   failure to exhaust these claims.

21        As the Ninth Circuit noted in *Blake v. Baker*, 745 F.3d 977 (9th Cir. 2014), the contours

22   of what constitutes "good cause" under *Rhines* are not fully developed.  745 F.3d at 980.  In

23   the Ninth Circuit, the court of appeals, on the one hand, held in *Jackson v. Roe*, 425 F.3d 654

24   (9th Cir.2005), that good cause does not require a showing of "extraordinary circumstances."

25

26       [37]See text, *supra*, at 12-16.

27       [38]The court is not persuaded by respondents' suggestion that it should find to the contrary on the
28   basis that petitioner failed to affirmatively demonstrate the merit of the claims in his motion to stay.  See ECF
     No. 62, at 5.  However, petitioner clearly had the opportunity to address the issue as to the dismissed claims.

-19-

425 F.3d at 661–62.  On the other, the court of appeals held in *Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008), that a petitioner did not establish good cause simply by alleging that he was "under the impression" that his claim was exhausted.  540 F.3d at 1024.  As the court of appeals elaborated subsequently in *Blake*, the *Wooten* holding established "that unspecific, unsupported excuses for failing to exhaust – such as unjustified ignorance – did not satisfy the good cause requirement."  745 F.3d at 981.

In *Blake*, the court of appeals outlined the following requirements for a showing of good cause:

> The good cause element is the equitable component of the *Rhines* test.  It ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a claim in state court.  As such, good cause turns on whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence, to justify that failure. . . . .  An assertion of good cause without evidentiary support will not typically amount to a reasonable excuse justifying a petitioner's failure to exhaust. . . . .
>
> While a bald assertion cannot amount to a showing of good cause, a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will. . . . .

745 F.3d at 982.

In the present case, virtually all of petitioner's argument specific to his case as to good cause concerns the failure to exhaust ground 4.  He urges that he sought to present his challenges to the habitual criminal adjudication in two motions to correct or vacate sentence but the state supreme court held that the claims were outside the scope of claims that could be considered on such a motion.[39]  This court is dismissing ground 4 on the merits as plainly meritless, however.  Petitioner's discussion virtually exclusively regarding ground 4 does not demonstrate good cause for his failure to exhaust the remaining unexhausted claims instead in grounds 1 and 2.[40]

---

[39]ECF No. 61, at 6-11.

[40]Petitioner's showing as to ground 4 does not address his failure to present the legal theory that he instead presents in federal court – that he is actually innocent of the habitual criminal adjudication – to the

(continued...)

-20-

Petitioner otherwise makes a passing reference to the statement in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." 544 U.S. at 416. This statement in *Pace* has nothing to do with this case. The Supreme Court was discussing a situation where a petitioner files a protective federal petition while he litigates a state post-conviction petition *presenting the unexhausted claims* which potentially might be found to be time-barred. Adkins did not file the federal original or amended petitions while a potentially time-barred state post-conviction petition presenting the unexhausted claims in grounds 1 and 2 still was working its way through the state system. He has not as yet fairly presented those claims to the state courts. The statement in *Pace* thus does not provide a basis for a finding of good cause in the present case.

Petitioner further urges in his reply that the case is complex and confusing and is even more so to an inmate allegedly with severe mental illness and no education. He maintains that he knows nothing about the law and that he must depend upon the help of inmate writ writers who "don't know what they are doing either." Petitioner asserts that, because of inmate transfers, he is unable to obtain the continuous assistance of one writ writer who understands the law over the course of his case.[41]

The record of the state post-conviction proceedings unequivocally belies petitioner's unsupported assertions to this court that he has been incapable of fairly presenting the claims in this case due to mental health issues and lack of education. That record further wholly belies his suggestion that – due to his own alleged inability to present claims – he thus has been wholly at the mercy of which inmate writ writer is helping him at a given time.

Adkins was actively engaged in the litigation of his state petition, even after the appointment of post-conviction counsel. The court is not referring merely to written filings that

---

[40](...continued)
state courts via *any* procedural vehicle. Be that as it may, however, ground 4 in all events is plainly meritless and is being dismissed on the merits.

[41]ECF No. 64, at 2 & 4.

conceivably could have been written by other inmates.  The court instead is referring to Adkins' active individual participation in court proceedings where he – quite obviously – was not communicating with the state court through the intermediation of an inmate writ writer. In those live in-court proceedings, Adkins at times sharply critiqued appointed counsel's pursuit of his claims.[42]  Moreover, Adkins, with leave of court, presented argument to the state district court supporting his claims and interrogated witnesses,[43] on his stated premise that counsel had been appointed only to "assist" him in presenting his case.[44]  Adkins essentially acted as co-counsel at the state evidentiary hearing in terms of the level of his participation.

The foregoing record, again, unequivocally belies petitioner's conclusory assertions that he was unable to present the unexhausted claims previously in state court due to severe mental illness and lack of education.  That record, again, wholly belies his suggestion that he has been at the mercy of inmate writ writers as to the claims that he was able to pursue.

Under *Blake*, "unspecific, unsupported excuses for failing to exhaust – such as unjustified ignorance – [do] not satisfy the good cause requirement."  745 F.3d at 981. Petitioner has presented no more than that with regard to his failure to exhaust the remaining unexhausted claims in grounds 1 and 2.

The motion for a stay therefore will be denied.[45]

IT THEREFORE IS ORDERED that respondents' motion (ECF No. 55) to dismiss is GRANTED IN PART and DENIED IN PART, as further specified herein in the remaining provisions below in this order.

---

[42]See, e.g., Ex. 122, at 7-11.

[43]*Id.*, at 6-11, 16-17, 21-23, 28-37, 39-40, 50-52, 69-72, 87-88, 129-30,  & 139-44.  See also *id.*, at 99-101 & 103 (petitioner's testimony as to his development of his legal theories challenging his conviction and sentence, including his analysis of the results of the research that he personally conducted).

[44]*Id.*, at 44-46.

[45]Given petitioner's failure to establish good cause for his failure to exhaust the unexhausted claims that are not subject to dismissal as plainly meritless, the court has no occasion to consider whether petitioner has been intentionally dilatory.  Petitioner must satisfy all three of the *Rhines* requirements to obtain the stay that he requests under that decision.

1   　　　　IT FURTHER IS ORDERED that the following claims are DISMISSED with prejudice

2   on the merits under 28 U.S.C. § 2254(b)(2):  (1) the Eighth Amendment claim in ground 1; (2)

3   the Fifth and Eighth Amendment claims in ground 3; and (3) ground 4 in its entirety.

4   　　　　IT FURTHER IS ORDERED that the court holds that the following remaining claims are

5   unexhausted:  (1) the claim in ground 1 that petitioner was denied a due process right to not

6   be subjected to involuntary administration of narcotic and anti-psychotic medications; (2)

7   claims in ground 1 based upon an allegation that medications were injected into petitioner by

8   force several times the day of his plea, including just prior to the hearing; and (3) ground 2 in

9   its entirety.

10   　　　　IT FURTHER IS ORDERED that petitioner shall have **thirty (30) days** from entry of this

11   order within which to mail to the Clerk for filing a motion for dismissal without prejudice of the

12   entire petition or for partial dismissal only of the unexhausted claims described in the

13   preceding paragraph.  If petitioner presents a motion for partial dismissal only of the

14   unexhausted claims, he shall use the description of those claims from the preceding

15   paragraph verbatim in his motion to dismiss to identify the claims as to which he seeks

16   dismissal.

17   　　　　IT FURTHER IS ORDERED that petitioner's motion (ECF No. 61) for a stay and

18   abeyance is DENIED.

19   　　　　The entire petition will be dismissed without prejudice for lack of complete exhaustion

20   if a motion as provided for herein is not timely mailed for filing.

21   　　　　　　　DATED:  December 7, 2016.

22

23

24   　　　　　　　　　　　　　　　　_____

25   　　　　　　　　　　　　　　　　JAMES C. MAHAN
     　　　　　　　　　　　　　　　　United States District Judge

26

27

28

-23-