UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| FREDERICK W. ADKINS, | Case No. 2:13-cv-02170-JCM-PAL |
|---|---|
| Petitioner, | ORDER |
| v. | |
| DWIGHT NEVEN, *et al.*, | |
| Respondents. | |

This *pro se* habeas petition (ECF No. 50) comes before the court for consideration of the merits of the petitioner's remaining claims. Respondents have answered (ECF No. 77), and petitioner has replied (ECF No. 84).

**Background**

Petitioner in this action challenges his state court conviction, pursuant to a guilty plea, of failure to stop on signal of an officer, assault, battery, false imprisonment, unlawful taking of a vehicle, and intimidating a witness. (ECF No. 50 at 2 & 60). The charges arose out of incidents that took place on or around March 22, 2007, and during petitioner's subsequent incarceration. (Ex. 32).[1]

Petitioner was arrested and criminal proceedings commenced on or before May 1, 2007. (*See* Exs. 2 & 4). At a June 7, 2007, hearing on a motion to dismiss counsel filed by petitioner *pro se*, petitioner was not present, as he had recently attempted suicide and was recovering in the hospital. (Ex. 10 (Tr. 2-3)). Defense counsel, Jason Earnest, asked to conditionally waive the preliminary hearing in justice court so that petitioner could have a competency evaluation. (*Id.* at 3). Petitioner was bound over to district court for that purpose and committed to Lake's Crossing

---
[1] The exhibits cited in this order, comprising the relevant state court record, are located at ECF Nos. 19-25.

1

for evaluation. (Exs. 12, 15 & 16). Both evaluations conducted found petitioner competent -- one noting he was "clearly competent." (Ex. 43 at 4). On August 27, 2007, petitioner was remanded to Justice Court. (Exs. 19 & 20).

In the meantime, Earnest had removed himself from the case and Harold Kuehn took over petitioner's representation. (*See* Ex. 28). Petitioner's preliminary hearing commenced on November 9, 2007, but midway through, petitioner decided that he wanted to waive the remainder of the hearing and take a plea offered by the State. (*Id.* (Tr. at 62)). The parties told the court they were agreeing to a ten- to twenty-five-year term on each of the two felony counts to which petitioner would plead, that the State could argue for the terms to run consecutively, and that petitioner understood the court could *sua sponte* sentence him to life in prison without the possibility of parole. (*Id.* at 64-65). The court then canvassed petitioner as follows:

> THE COURT: All right. Mr. Adkins, do you understand the negotiations?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you agree with them?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand by waiving your preliminary hearing today that you're giving up your right to complete the preliminary hearing?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that once you get to District Court, if these negotiations do not go through as planned or if you change your mind, you would proceed directly on to trial at the District Court level?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Is your waiver voluntary?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you believe you are of sound mind to know what you're doing today?
>
> THE DEFENDANT: Yes, ma'am.

(*Id.* at 65-66). Defense counsel then told the court:

MR. KUEHN: I prepared thoroughly on this case, and I gave my client discovery. . . . . I checked with my client several times before the proceeding today just to make doubly sure that he wanted to do this, and I'm just going to ask him one more time. Fred, do you want to waive this and go forward?

THE DEFENDANT: Yes.

(*Id.* at 67).

Petitioner was bound over to district court and an amended information reducing the number of counts was filed, but at some point petitioner indicated he wanted to negotiate the deal further. (*See* Ex. 38 (Tr. 4); Ex. 33). The State responded by filing a second amended information realleging fourteen counts encompassing varying instances of criminal conduct, which defense counsel then moved to sever. (*See* Ex. 38 (Tr. 4); Ex. 34; Ex. 35 at 3).[2]

On December 3, 2007, the parties appeared in court to argue the motion to sever or to proceed with arraignment. (Ex. 38). At the hearing, Thomas Gibson appeared for Harold Kuehn. As the parties began to discuss the motion to sever, petitioner stated: "As far as I know, there was – me and [the prosecutor] who reached a plea agreement. I got it here now. I'm supposed to sign it now. I mean, I don't understand what all this other stuff is about, [prosecutor]." (Ex. 38 (Tr. at 3)). The prosecutor responded, "I'm good to go. Let's sign it. Let's get it done." (*Id.*) Gibson, however, who was not petitioner's normal counsel, vigorously attempted to prevent petitioner from entering a plea until he had had a chance to talk with Kuehn. (*Id.* at 3-4). In response, petitioner stated: "If there's a problem with that, Your Honor, I have a motion already filed and notarized to dismiss counsel of record, and I can represent myself." (*Id.* at 4). Gibson continued to insist that he have a chance to talk with Kuehn, stating that petitioner

> needs to understand [that] time sometimes works against a person in a situation like this. It sounds like he's eager to do something, and that's oftentimes, you know, kills a person's liberty interests over the big picture. So I would like to have [Kuehn] actually speak with him. I want to find out what's going on. If [Kuehn] feels it's in his best interests to do this, okay, that's one thing.

(*Id.* at 5). When the court mentioned continuing the hearing for two weeks, petitioner objected. (*Id.* at 6). The prosecutor then stated:

> This isn't . . . a knee jerk reaction. Mr. Adkins has been in custody for, oh, quite some time . . . . And when we met at the preliminary hearing, Mr. Kuehn and myself

---

[2] Citations are to original page of document.

3

and Mr. Adkins, over a period of time – it took us, I don't know, multiple hours to finally come to a resolution of how we wanted this case to resolve. And we reached that agreement. . . . . [W]e've been working on this for months.

(*Id.* at 7). Petitioner added that his disagreement with the original deal was minor and had simply to do with getting credit for time served, stating, "I mean, I'm being [sentenced to] two 10 to 25s, so what's 80 days or 100 days going to do to the 20 to 50 years I'm being sentenced to." (*Id.* at 8). He further stated:

> [W]hether Mr. Gibson here wants to go forward or not, I want to go forward. If he doesn't want to go forward or [Kuehn] doesn't want to go forward, I have motions here to fire them both. I have good grounds because of Mr. Earnest, and I'll represent myself. And I've got the plea agreement all ready here and I can sign it and we can go ahead and sentence me today.

(*Id.* at 8). The court nonetheless gave defense counsel a few hours to contact attorney Kuehn. Kuehn gave his blessing, and petitioner entered his change of plea.

The agreement petitioner signed included pleading to several of the charged crimes, including two felonies, and provided for habitual criminal enhancement of 10 to 25 years on the felonies, potentially consecutively. (*See* Ex. 39 (Tr. 18-19)). When the court asked the petitioner whether he had ever been treated for any mental disorder, petitioner said yes, indicating that he was on medications for "bipolar, manic depressive and slight schizophrenic." (*Id.* at 20-21). Gibson interjected that that he was concerned about petitioner's schizophrenia diagnosis, which can indicate problems with cognitive reasoning, but that in his

> discussions with the defendant, he seems to be lucid and understand what's going on. He explained at length that he had read over the Guilty Plea Agreement and was in agreement with it and even stated certain parts, which at one time he disagreed with, but now he's willing to [move forward s]o that type of discussion leads me to believe that he seems to be lucid and understands the nature of the charges and ramifications thereof of a guilty plea.

(*Id.* at 21-22). The prosecutor pointed out that petitioner was found competent, and petitioner indicated that he was on his meds and understood "perfectly . . . everything that's going on." (*Id.* at 22).

By sentencing on January 28, 2008, however, petitioner wanted to withdraw his plea. (Ex. 49 (Tr. 3-4)). Defense counsel Kuehn indicated that petitioner both thought it was not entered knowingly and voluntarily and had some aspect of "buyer's remorse" because he thought the penalty was disproportionate to the crimes. (*Id.* at 4-5 & 7). Petitioner himself then explained:

4

> I'm not denying the fact that I ran from the police. I am willing to plead guilty to that, but I do not see me being sentenced to 20 to 50 years as reasonable when I haven't been as bad as [the prosecutor] is trying to make me seem. Yes, I did bad things but that was when I was younger. I was sentenced as Youthful Offenders. A lot of them were no contest. I mean, I deserve to go to prison, yes, sir, I do. Okay. I did run from the Police. I admit that. Yes, I did make a threatening phone call.

(*Id.* at 9-10). When the court asked petitioner why he wanted to withdraw his plea after he admitted to doing everything he pled to, petitioner explained that he didn't want to withdraw the whole plea, just the agreed-upon sentence because he thought it was too high. (*Id.* at 10). Petitioner said: "I'm not arguing – see I'm not asking you withdraw my plea. In a way I was, but I'm not." (*Id.* at 13).

The court denied the motion to withdraw, and sentencing proceeded. (*Id.* at 13). When petitioner had a chance to speak, he did so at length. (*Id.* at 31-34). Petitioner explained that he had agreed to the plea at a time he thought he had nothing to lose but that now he realized he had a lot to lose. (*Id.* at 34).

While the court was pronouncing sentence and wondering aloud where all of petitioner's anger came from and how he could be "cure[d]," petitioner interjected that he was "on a lot of medication that [he] just recently got – Ritalin, Depakote, Seroquil, and Prozac." (*Id.* at 41). Ultimately, the court decided to run the felony sentences consecutively. (Ex. 50). Petitioner appealed, and the Nevada Supreme Court affirmed. (Exs. 52 & 61).

Petitioner filed a state petition for writ of habeas corpus relief.[3] (Ex. 64). Among other claims, petitioner alleged that his plea was involuntary because he was under the influence of three psychotropic drugs at the time. (*Id.* at 5-6). The trial court summarily denied petitioner's motion for appointment of counsel and the petition, but the Nevada Supreme Court reversed and remanded on the grounds that appointment of counsel was required for a meaningful litigation of the petition, in part because some of the issues petitioner raised "require the development of facts outside the record." (Ex. 81; Ex. 89 at 2).[4]

On remand, counsel was appointed and a psychological examination of petitioner authorized. (Exs. 90 & 117). An evidentiary hearing was set but then continued so the expert

---
[3] Petitioner also filed several other motions in the trial court and petitions for review with the Nevada Supreme Court, none of which is relevant to the instant petition, as previously noticed by the court.
[4] Citation is to original page of document.

5

could complete his examination and report. (Ex. 117). The expert ultimately found petitioner competent. (Ex. 122 (Tr. 3-4)). But at the continued evidentiary hearing, petitioner's counsel argued that the expert did not know that petitioner was on "six different psychotropics" and so they needed more time to obtain evidence of those drugs and present that to the expert for reconsideration of his opinion.[5] (*Id.*) The state court took under advisement whether any further factual development was necessary on that point and ordered the evidentiary hearing to proceed in all other respects. (*Id.* at 25-26).

Kuehn testified that he was aware petitioner was on some medications. (*Id.* at 55). But, he said, there was nothing in the Lake's Crossing report or otherwise that led him to believe petitioner could have asserted an insanity defense and nothing in his interactions with petitioner suggested petitioner was incompetent or did not understand what was going on. (*Id.* at 80, 84-85, 89-90). Kuehn further testified that he did not do a lot of investigation because petitioner decided to take the plea at the preliminary hearing. (*Id.* at 79 & 82). Kuehn further discussed during his testimony that petitioner believed the witnesses against him were lying, having been intimidated by the prosecutor to do so. (*Id.* at 60-65).

Petitioner testified that he hears voices and is bipolar, having manic and depressed episodes. (*Id.* at 95). He claimed he told his attorneys about this but they ignored him. (*Id.*) He testified that he was "really confused. At one point I wanted to take the plea. The next point I wanted to take it back. I just didn't feel it was right. I felt something was wrong. I wrote numerous letters saying I would take the plea. I wrote numerous letters saying I don't want the plea." (*Id.* at 96). Petitioner testified that when he changed his plea, he was on Haldol, lithium, sinequan, Seroquel, Prozac, Ritalin and Depakote, but at Lake's Crossing, where he was found competent, he was on only sinequan and lithium. (*Id.* at 96-97). After he left Lake's Crossing, the prison kept him so drugged up that all he did was sleep. (*Id.* at 105). Petitioner asserted that sinequan is a very powerful drug that keeps you knocked down all the time. (*Id.* at 106). By "knocked" down he meant zombie like -- impaired speech, cotton mouth, vision, sleepiness, blurred thoughts. (*Id.*

---

[5] Relevantly, petitioner told the court that he was on more medications the day he took the plea than he was on at Lake's Crossing, where he was evaluated for competency pretrial. (Ex. 122 (Tr. 5-25)).

6

at 129). He claimed to have been in that stupor constantly from the time he was released from Lake's Crossing and that he "slept walked" all the way through his preliminary hearing and arraignment. (*Id.* at 130). He then he rescinded that claim and testified he was not acting like that, but that the narcotics did leave him "confused." (*Id.* at 131 & 139). He testified that the only thing he recalled about the plea was saying yes and no; he didn't remember going into detail about anything. (*Id.* at 97). He stated specifically: "[A]s far as what I remember, I just wanted to get it over with. I didn't care if they gave me life or if Judge Lane gave me 50 years or – I just didn't care." (*Id.* at 97). He then explained that he later wanted to withdraw his plea because he "just didn't feel that it's right, that I didn't understand everything, that I wanted a lesser sentence." (*Id.* at 97-98). He testified that he was on no medications at the time of the crimes and that he could have asserted a "bipolar defense" as such but that his attorneys never advised him of this defense and had he known it existed he never would have pled. (*Id.* at 100). Petitioner admitted, however, that he sent letters directly to the prosecutor throughout his case, trying to negotiate a plea. (*Id.* at 115-16).

The evidentiary hearing was held on October 24, 2011. (Ex. 122). Six months later, the trial court issued its opinion denying the petition. (Ex. 133). In so doing, the trial court held that further evidence as to petitioner's competence and the medications he was on at the time of his plea would not have been helpful. (*Id.*) On appeal, the Nevada Supreme Court affirmed. (Ex. 168).

Petitioner thereafter filed the instant federal habeas petition. Several claims in whole or in part were earlier dismissed, leaving only two claims for review on the merits: (1) petitioner did not knowingly and voluntarily enter a guilty plea because he was under the influence of narcotics and anti-psychotic medications, and counsel was ineffective for allowing him to plead; and (2) counsel was ineffective for failing to investigate in general, and specifically for failing to investigate a mental health defense. (ECF No 3 at 3 & 9).

**Standard**

28 U.S.C. § 2254(d) provides the legal standards for my consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). My ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than

8

incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

The state courts' decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, -- U.S. --, 135 S. Ct. 2187, 2208 (2015).

**Analysis**

I.     Ground 1

In Ground 1, petitioner asserts that trial counsel was ineffective for failing to object to the guilty plea as petitioner was under the control of a dangerous mixture of involuntarily administered narcotic and antipsychotic drugs on the day he pled. (ECF No. 50 at 3). The side effects were confusion, blurred vision, and sleepiness. (*Id.* at 3-3A). Ground 1 essentially asserts two claims: (1) petitioner was denied due process because his plea was not competent, knowing and/or voluntary due to the effect of the several psychotropic medications he was on, and (2) counsel was ineffective for allowing petitioner to enter a plea in that condition and for not thereafter objecting to the plea.

9

In rejecting the state petition, the trial court held in relevant part: (1) "Petitioner consistently demonstrated an understanding of the factual basis for the charges and consistently relied upon a factual basis for his defense," (Ex. 133 at 4); (2) "Petitioner also consistently, even at times in conflict with advice of counsel, sought to get a negotiated deal going to the extreme of sending correspondence to the prosecuting attorney in an attempt to negotiate a deal directly with the State", *(id.)*; (3) "[t]his court found the Petitioner to be lucid, in command of his memory and able to appropriately respond to all questions posed during the plea canvass," *(id.* at 5); (4) the court addressed petitioner's mental illness and medications during the plea canvass, and "as a result of Petitioner's statements that he was on medications for his mental illness and that he was capable of understanding what was occurring, statements from defense counsel that he appeared lucid and capable of understanding, and the evaluation from Lake's Crossing Centers this court found Petitioner understood the nature of the proceedings and the consequences of what he faced," *(id.)*; (5) "Petitioner admitted to circumventing his medication regime by regurgitating his medicines, storing them and attempting to overdose. Defense counsel had several meetings with Petitioner in which any changes in Petitioner's mental state could be evaluated," *(id.)*; (6) "Defense counsel testified there was nothing in his discussions with Petitioner or the evaluation report that give rise to a possible defense particularly in light of Petitioner's desire to pursue a defense that" the witnesses against him were lying "thus negating any defense predicated on the impulsiveness caused by his alleged mental condition," *(id.* at 5-6); (7) "Petitioner[] testified he was drugged on the date of the arraignment and sentencing to an extent that made him zombie-like or acting as a sleepwalker. This claim lacks credibility since he exhibited no such behavior while maintaining he was on his prescribed medications," *(id.* at 6); (8) "Petitioner exhibited the same mental state and capacity during all stages of the post-conviction process, including the evidentiary hearing, as he exhibited during the arraignment and sentencing stages, *(id.)*; (9) "Petitioner maintained during the evidentiary hearing that he does not act impulsively when on his medications. Petitioner further stated his medications knock him out and that his condition would be obvious to everyone. Petitioner has never appeared in such a mental state during hearings in which he professes to have been medicated," *(id.* at 7); (10) "Petitioner manipulated his medications in an apparent attempt to

create appellate issues," (*id.*); (11) "Petitioner admits his concern with this case is not with the plea to the charges but rather is that he just believes that the sentencing was wrong because he was treated as a habitual criminal," (*id.*); (12) "The testimony of any expert witness to offer an opinion that Petitioner would be incapable of understanding the consequences of his plea or the nature of the proceedings would not assist the court in a determination due to evidence presented by Petitioner concerning the usual impacts of the drugs on his behavior and demeanor, which behavior and demeanor as perceived by the court on multiple occasions was contrary to how Petitioner contends he should have been perceived," (*id.* at 7-8); (13) Petitioner voluntarily entered the plea agreement, understood the consequences of his plea and waived his constitutional rights as detailed in the written plea agreement, (*id.* at 8); and (14) "Petitioner suffered no prejudice from the entry of his plea due to him seeking entry of the plea on his own volition without inducement from his counsel or the State," (*id.*).

The Nevada Supreme Court affirmed the trial court without further discussion. Accordingly, as the trial court's decision is the last reasoned decision of the state courts on the due process claim, the Court looks to that decision in evaluating petitioner's claim. *See Murray v. Schriro*, 882 F.3d 778, 801 (9th Cir. 2018).

After review of the entire record -- especially the several hearings in which petitioner indicated a desire to plead, usually against the advice of counsel, and demonstrated a full grasp of the charges against him and the sentence he could expect to receive if he pled -- the court cannot conclude that the state courts were objectively unreasonable in finding that petitioner knowingly, voluntarily and competently entered his guilty plea, and thus that his counsel was not ineffective for allowing him to do so.[6]

The federal constitutional guarantee of due process of law requires that a guilty plea be knowing, intelligent and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v.*

---

[6] In light of the fact the trial court did not continue to hold the record open for expert review of petitioner's case in light of the several medications he claimed to be on at the change of plea, this court previously indicated that the "question on the merits on federal habeas review as to ground 1 therefore will be whether the state courts' disposition of the claims on the merits, on the rationale relied upon by the state courts without the further record development sought by petitioner, withstands review under the standards in 28 U.S.C. § 2254(d). If the state court disposition does withstand review under AEDPA, no further factual development may be considered by the federal court. *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). If it does not, then the claims would be subject to de novo review

11

*Alabama*, 395 U.S. 238, 242 (1969); *United States v. Delgado–Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011). The defendant must also be competent to enter his plea, and competency is measured by the same standard applied to the question of whether a defendant is competent to stand trial. *See Godinez v. Moran*, 509 U.S. 389, 400–01 (1993).

"The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. Those circumstances include "the subjective state of mind of the defendant . . . ." *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986). Addressing the "standard as to the voluntariness of guilty pleas," the Supreme Court has stated:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (noting that the "longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'").

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the Supreme Court addressed the evidentiary weight of the record of a plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S.

---

with possibly further federal record development." (ECF No. 66 at 8 n. 16). The court now concludes that the state courts' conclusion was objectively reasonable and thus no further factual development is required.

at 74; *see also Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012); *Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006).

Ineffective assistance of counsel claims are governed by *Strickland*, 466 U.S. 668. Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696.

Here, preliminarily, petitioner was found competent to stand trial. Petitioner's testimony at the evidentiary hearing was that sinequan is a drug that knocks him out, but he also admitted he was on sinequan at the time he was determined to be competent. As noted, the standard for competency is the same whether evaluating competency to stand trial or to plead guilty. It was not therefore objectively unreasonable for the state courts to find petitioner was competent to enter his plea.

Furthermore, the record amply reflects that petitioner knowingly and voluntarily entered his plea, or at least it was not objectively unreasonable for the state courts to so conclude. As early as his June 11, 2007, hearing, before his competency evaluation, petitioner indicated that he wanted to plead guilty, going so far as to state that he would "take life in prison without the possibility of parole. . . ." (Ex. 15 (Tr. 8)). Two months after he returned from Lake's Crossing, petitioner again wanted to enter his plea, and the record reflects that discussions regarding the plea had been ongoing for some time. The transcript of those proceedings further reflect someone who understood what was going on. Petitioner indicated that his attorney "came to see me on the 20th and we discussed [the plea] deeply." (Ex. 39 (Tr. 14)). When the prosecutor was listing the crimes that petitioner would be pleading guilty to, he had difficulty remembering the last one and stated,

13

"[H]elp me out." (*Id.* at 16). Petitioner responded, "Eluding an officer. . . . Failure to stop on signal of police officer." (*Id.*) On December 3, 2007, when the parties were set to argue the motion to sever following petitioner's apparent decision to back out of the deal, it was petitioner who instigated discussions about signing the plea and insisted on doing so despite reservations of the attorney appearing on his behalf, threatening to fire both of his attorneys if they did not let him plead. The prosecutor again indicated that they had been discussing the plea for a long time, and petitioner again demonstrated a clear understanding of what he was pleading to. When the subject of his mental health and medications arose, petitioner assured the court he understood "perfectly . . . everything that's going on." (Ex. 39 (Tr. 22)). And even on the date of sentencing when petitioner wanted to withdraw his plea, there is no indication that petitioner was confused about his plea or his likely sentence; in fact, his true gripe about the plea was that he then thought the sentence was unfair. In fact, the record clearly reflects that what happened was petitioner changed his mind with respect the length of sentence, not that he did not know what he was pleading to or what it meant. This was true at sentencing and true at the evidentiary hearing on his state habeas petition.

Even the psychological expert hired by petitioner in his state postconviction proceedings could find no reason to question his competence. While petitioner asserts that the expert was not privy to the fact petitioner was on six different medications at the time of his plea, and that another expert with that information might conclude petitioner was not competent or did not understand what was going on, it was not unreasonable for the state court to decline to hold the record open for any such evidence – beyond the six months it waited to decide the petition after the evidentiary hearing – because petitioner's assertion that the medications knocked him out was completely inconsistent with not only the trial court's observations but the observations of two of petitioner's attorneys and what is apparent from the transcripts of the proceedings. Other courts have similarly rejected claims by petitioners that their pleas were not knowing and voluntary because entered under the influence of medications based, at least in part, on the observations of others that the petitioners did not appear to be impaired in any way. *See Tahl v. O'Connor*, 336 F. Supp. 576, 578-79 (S.D. Cal. 1971), *aff'd*, 460 F.2d 1068 (9th Cir. 1972); *United States v. Coleman*, 918 F.2d

181 (9th Cir. 1990) (unpublished disposition) (discussing *Tahl* favorably, in particular the district court's conclusion that petitioner's claim his plea was not involuntary because the only evidence in support that he was under the influence of drugs was his own testimony and "other witnesses who testified that petitioner's demeanor at the time the plea was entered failed to indicate that he was under the influence of drugs"); *see also Turner v. Henderson*, 387 F.2d 125, 126 (6th Cir. 1967) ("It is contended here that Turner had been addicted to drugs; that while he was confined in jail drugs were administered regularly to him, without the knowledge of his counsel; and that he could not effectively co-operate with them. They did know that some drugs were administered, but the proof does not show the kind and amount, or that they produced any noticeable effect on defendant when he conferred with his counsel and appeared in court."). *Cf. United States ex rel. Fitzgerald v. LaVallee*, 461 F.2d 601, 604 (2d Cir. 1972) (although affirming the district court's conclusion that a state prisoner's plea was unknowing and involuntary because he was under the influence of heroin, noting that it is unlikely any other court would have reached the same result given all the other indications in the record that petitioner understood the plea he was entering).

        The state courts' conclusion that petitioner's plea was competent, knowing and voluntary was not therefore contrary to, or an unreasonable application of, clearly established federal law or an unreasonable determination of the facts. For the same reasons, their conclusion that counsel was not ineffective for allowing petitioner to enter the plea was not objectively unreasonable. Petitioner offered no reason that his counsel should have suspected that petitioner's plea was invalid, and in fact counsel did object to the change of plea at a time where there were questions about whether petitioner could enter the plea knowingly. But petitioner pressed ahead and demonstrated to the court, and to his counsel's satisfaction apparently, that he could enter the plea. It did not therefore fall below the wide range of reasonable representation for counsel to allow petitioner to enter his plea and was not unreasonable for the state courts to reject this claim.

        Petitioner is not entitled to relief on Ground 1 of the petition.

II.  Ground 3

In Ground 3, petitioner asserts that his counsel was ineffective for failing to investigate a mental health defense.[7] (ECF No. 50 at 7, 7A & 7B). Petitioner asserts that counsel knew petitioner had a lifelong mental illness issues, was in and out of group homes, sexually assaulted, molested, beaten, and was not on his medications at the time of his crimes. (*Id.* at 7-7A). Petitioner argues that counsel should have investigated and pursued a "bipolar defense" pursuant to *Brown v. Uttecht*, 530 F.3d 1031, 1032 (9th Cir. 2008). (*Id.* at 7A).

The state trial court held in relevant part: (1) "Investigations were not pursued of any possible diminished capacity defense due to the desire of Petitioner to enter into a plea. Plea negotiations were pursued by Petitioner contrary to advice from counsel," (Ex. 133 at 6); (2) "No reliable evidence was presented that Petitioner raised any issues with his medications by informing his counsel he was not on any medications at the time of the offense thus failing to put counsel on notice of a possible defense," (*id.*); (3) "Reports and observed conditions in court and during meetings with defense counsel showed no evidence of diminished capacity such that, under the circumstances presented, counsel could be deemed ineffective in failing to investigate a possible defense of diminished capacity," (*id.* at 8); (4) "Defense counsel under the circumstances breached no duty to investigate a 'bipolar' defense when there was no indication from Petitioner his conduct at the time of the offense as related to counsel was the result of any mental disability. A bipolar defense was not legally relevant to the defense proffered by the Petitioner to his counsel in that Petitioner sought to show witnesses were lying and falsely accusing Petitioner," (*id.*); (5) "Counsel need not pursue defenses that are not reasonably suggested by the apparent factual circumstances of the crime as related by Petitioner or are inconsistent with observations of the demeanor of the Petitioner and the results of a mental evaluation," (*id.* at 9); (6) "Counsel acted reasonably under the circumstances given Petitioner's failure to supply essential underlying facts by informing counsel of the full import and breadth of his symptoms and claimed incapacities existing had he not been on his medications at the time of the criminal offense," (*id.*).

---

[7] Respondents argue that Ground 3 is not cognizable because it is precluded by petitioner's guilty plea pursuant to *Tollett v. Henderson*, 411 U.S. 258 (1973). The court has already rejected this argument and does so again on the grounds previously discussed. (ECF No. 66 at 17-18).

16

The Nevada Supreme Court rejected this claim as follows:

> Third, appellant claimed that his counsel was ineffective for failing to pursue an insanity defense. Appellant failed to demonstrate that his counsel's performance was deficient or that he was prejudiced. Prior to appellant's plea, appellant was evaluated and determined to be competent. Counsel testified that he reviewed the evaluation and did not find anything to support an insanity defense. Moreover, appellant did not demonstrate that he was in a delusional state during the crime such that he could not know or understand that nature and capacity of his acts or could not appreciate the wrongfulness of his acts. *See Finger v. State*, 117 Nev. 548, 576, 27 P.3d 66, 84-85 (2001). Accordingly, appellant failed to demonstrate a reasonable probability of a different outcome had counsel sought to present an insanity defense. Therefore, the district court did not err in denying this claim.
>
> …
>
> Fifth, appellant claimed that his counsel was ineffective for failing to investigate appellant's mental health or argue that he was incompetent. Appellant failed to demonstrate that counsel's performance was deficient or that he was prejudiced. Counsel testified that he had appellant evaluated for competency and that the evaluation showed that appellant was competent. Counsel testified that appellant was able to help in his defense and appeared to understand the proceedings. *See Melchor-Garcia v. State*, 99 Nev. 174, 179-80, 660 P.2d 1-9, 113 (1983) (citing *Dusky v. United States*, 362 U.S. 402 (1960)). Appellant failed to demonstrate a reasonable probability of a different outcome had counsel conducted further investigation into appellant's mental health. Therefore, the district court did not err in denying this claim.

(Ex. 154 at 3-4).[8]

The state courts' conclusion was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts. To the extent petitioner asserts counsel should have pursued a defense pursuant to *Brown*, that case was not issued until after petitioner had entered his plea and been sentenced, so counsel could not have been deficient for failing to pursue any defenses suggested therein.[9] The state courts further were not unreasonable in concluding that counsel had no reason to pursue a bipolar or other insanity defense because there was no evidence that petitioner ever advised counsel he was not on his medications at the time of the offenses and the competency evaluations did not suggest any such

---

[8] Citation is to original page of document.
[9] Petitioner was sentenced in January 2008. *Brown* came out in June 2008.

17

defense.[10] Petitioner therefore has not shown his counsel was deficient, and the state courts were not objectively unreasonable in rejecting this claim.

Petitioner is not entitled to relief on Ground 3 of the petition.

**Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

**Conclusion**

In accordance with the foregoing, IT IS THEREFORE ORDERED that the amended petition (ECF No. 50) is DENIED on the merits, and this action is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that petitioner is DENIED a certificate of appealability.

IT IS FURTHER ORDERED that petitioner's motion for status check (ECF No. 85) denied as moot.

---

[10] Neither evaluation found petitioner to have schizophrenia or bipolar disorder; both evaluations noted antisocial personality disorder, while one further noted depression and the other further noted an unspecified mood disorder. (Exs. 42 & 43).

18

The clerk of court shall enter judgment accordingly and close this case.

DATED December 27, 2018.

/s/ James C. Mahan
JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE